UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOMINIC MAIZE,

    Petitioner,

-vs-                                                 Case No. 8:04-CV-1114-T-27MSS

JAMES R. MCDONOUGH,[1]

    Respondent.
_____/

## ORDER

Petitioner, a State of Florida inmate proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 1999 convictions for first degree murder, attempted robbery with a firearm, and armed burglary entered by the Twelfth Judicial Circuit Court, Manatee County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 22) and Petitioner has filed a reply thereto (Dkt. 24). The matter is now before the Court for consideration on the merits of the Petition.

### Background

On October 13, 1998, a Grand Jury indictment was filed charging Petitioner with first degree murder, attempted robbery with a firearm, and armed burglary of a dwelling. (Dkt. 19, Ex. 024, Vol. I at 8-10). On September 1, 1999, the jury found Petitioner guilty as charged. (Dkt. 19, Ex. 024, Vol. I at 73-75). On November 15, 1999, the court sentenced Petitioner on the

---

[1] James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

murder charge to life in prison and on the other two counts to 106.75 months in prison. (Dkt. 19, Ex. 024, Vol. I at 81-87).

On January 19, 2001, the state appellate court affirmed Petitioner's judgment of conviction. (Dkt. 19, Ex. 003); *See Maize v. State*, 785 So.2d 485 (Fla. 2d DCA 2001)[Table].

On May 18, 2001, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 raising ten claims of ineffective assistance of trial counsel. (Dkt. 19, Ex. 005). On November 16, 2001, the state trial court summarily denied the motion (Dkt. 19, Ex. 006). On May 22, 2002, the state appellate court entered a per curiam decision affirming the trial court's decision. (Dkt. 19, Ex. 010); *See Maize v. State*, 827 So. 2d 993 (Fla. 2d DCA 2002)[Table].

On September 24, 2002, Petitioner filed a Rule 3.800 motion to correct illegal sentence. (Dkt. 19, Ex. 014). On November 1, 2002, the state trial court denied the motion to correct sentence. (Dkt. 19, Ex. 015). On February 21, 2003, the state appellate court entered a per curiam decision affirming the trial court's decision. (Dkt. 19, Ex. 017); *See Maize v. State*, 840 So. 2d 238 (Fla. 2d DCA 2003)[Table].

On April 30, 2003, Petitioner filed a petition for writ of habeas in the state appellate court claiming ineffective assistance of appellate counsel, and he subsequently filed an amended petition for writ of habeas corpus on May 14, 2003. (Dkt. 19, Ex. 019-020). On September 16, 2003, the state appellate court dismissed the petition as untimely. (Dkt. 19, Ex. 023); *See Maize v. State*, 860 So.2d 420 (Fla. 2nd DCA 2003)[Table].

On October 22, 2003,[2] Petitioner filed the instant habeas petition, raising two grounds of ineffective assistance of appellate counsel, and five grounds of ineffective assistance of trial counsel. (Dkt. 1). Respondent acknowledges that the petition is timely but argues that it should be denied because Petitioner has failed to make the showing necessary for relief under 28 U.S.C. § 2254, and his claims of ineffective assistance of appellate counsel are procedurally barred. Having reviewed the record, the parties' arguments, applicable statutes, and controlling case law, for reasons set forth below, this Court agrees with Respondent.

**Standard of Review**

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Haley*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] A pro se inmate's petition is deemed filed the date it is delivered to prison officials for mailing. *Houston v. Lack*, 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993). *(See* Dkt. 1 at 16).

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec'y. for the Dep't of Corr.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91. Since Petitioner's convictions were entered after AEDPA was enacted, his petition is subject to the provisions thereof.

**Standard for Ineffective Assistance of Counsel Claims**

Petitioner raises allegations of ineffective assistance of trial and appellate counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). In order to show a violation of the Sixth Amendment right to counsel, Petitioner must satisfy the two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674(1984); *see Bell v. Cone*, 535 U.S. 685, 698, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)(courts should apply *Strickland* to claims that counsel failed to satisfy constitutional requirements at specific points). First, Petitioner must demonstrate that the attorney's

performance was deficient, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, Petitioner must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner must prove both prongs of *Strickland*. Therefore, if Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,....that course should be followed."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

### Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "allege[] facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). For reasons discussed below, an evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claims. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

**Ground One**

In Ground One, Petitioner claims that his trial counsel was ineffective in failing to inform him of the existence of a voluntary intoxication defense. Petitioner asserts that he informed trial counsel that at the time of the crime he was intoxicated on alcohol, marijuana, and crack cocaine, but trial counsel failed to advise him of the voluntary intoxication defense, and failed to raise the defense at trial. Therefore, Petitioner argues, trial counsel deprived him of a viable defense to the crimes.

Petitioner presented this claim to the state court in his rule 3.850 motion. (Dkt. 19, Ex. 005). The state court denied relief as follows:

> **Ground One:** Defendant alleges counsel was ineffective because she failed to advise the Defendant of the possible alternative defense of voluntary intoxication. According to the Defendant he told counsel that he was extremely intoxicated at the time the crimes were committed. Defendant alleges that had he known of this defense, he would have insisted on proceeding to trial using voluntary intoxication as his defense.
>
> Voluntary intoxication is a defense only to crimes requiring specific intent. *See Leschka v. State*, 691 So.2d 535 (Fla. 2d DCA 1997); *Linehan v. State*, 442 So.2d 244 Fla. 2d DCA 1983). In order for voluntary intoxication to be a defense to a crime, the intoxication must be such that the defendant was incapable of forming the mental intent necessary to commit the crime. The use of alcohol and/or drugs to the extent that it merely diminishes perceptions or clouds reason and judgment does not excuse the commission of a criminal act. *See* § 3.04(g), Fla. Standard Criminal Jury Instructions (emphasis added).

6

Defendant cites *Price v. State*, 487 So.2d 34 (Fla. 1st DCA 1986), and *Gardner v. State*, 480 So.2d 91 (Fla. 1985), and states that he consumed crack cocaine in "larger quantity than the alcohol/marijuana mentioned in *Gardner*." In *Gardner*, an accomplice testified that the defendant had consumed several beers and smoked several high-potency marijuana joints prior to committing his crimes. *Gardner*, 480 So.2d at 92-93. As a result, the Florida Supreme Court held that the evidence warranted a jury instruction on voluntary intoxication. Similarly, in *Price*, the record demonstrated that Price had consumed a half quart of whiskey and smoked marijuana shortly before the crimes and his consumption of alcohol continued during his criminal episode. *See Price*, 487 So.2d at 34.

Notably, the Defendant in this case fails to state how much crack cocaine he ingested, just that it was a "larger quantity" than that mentioned in *Gardner*. It is not enough, however, for the Defendant to allege generally that "he did more drugs" than what he has read in another case. The Court would also note that the record does not support the Defendant's claims.

The crimes occurred prior to 2 a.m. on 9/26/98. The Defendant was arrested at approximately 4:30 a.m. (T.T. 310-312) Ron Branch testified that he read the Defendant his Miranda rights in the vehicle on the way back to the Sheriff's Office, and he did not appear to be under the influence of any drugs or alcohol which would have prevented his understanding of those rights. (T.T. 299-300) Likewise, Sergeant John Kenney of the Manatee County Sheriff's Office testified that he also recited Miranda rights to the Defendant when he came into contact with him around 4:30 a.m., and the Defendant did not appear to be under the influence of any alcohol or drugs or anything that would prevent him from understanding his rights. (T.T. 313)

At no time during his taped statements to the detectives or during his actual trial testimony did the Defendant state that he had consumed any alcohol or drugs on the night in question. (T.T. 320-400, 447-477) In fact, under direct questioning of Detective Kenney, the Defendant stated, "I don't smoke pot myself." (T.T. 337) During Kenney's cross-examination, counsel also brought out the fact that the Defendant had first told detectives that he was at home sleeping all night prior to being arrested. (T.T. 400-401)

In sum, the discovery available to defense counsel, including the Defendant's own statement, do not support the Defendant's allegations that he was intoxicated at the time the crimes were committed. Therefore, Defendant's counsel cannot be deemed ineffective for failure to advise the Defendant on the defense of voluntary intoxication where there was no evidence to sustain such a defense.

(Dkt. 19, Ex. 006 at 2-4). The state court correctly recognized that *Strickland* governs Petitioner's ineffective assistance of counsel claim. (*See* Dkt. 19, Ex. 006 at 2). Consequently, Petitioner cannot meet the "contrary to" test in Section 2254(d)(1). Petitioner instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.

Petitioner presents no evidence that demonstrates entitlement to relief. *See Hill v. Lockhart*, 474 U.S. at 52 (conclusory allegations presented in support of an ineffective assistance of counsel claim are insufficient to raise a constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, or unsupported claims cannot support an ineffective assistance of counsel claim). The record supports the state court's denial of this claim.[3] The record shows that Jennifer Martin testified that shortly before the victim was shot, she allowed Petitioner to drive her car while she and Roby Robison were passengers in the car, and Jennifer Martin made no indication that Petitioner was or appeared intoxicated (Dkt. 19, Ex. 024, Vol. III at 209-217). Officer Branch and Sergeant Kenney both testified that after Petitioner was apprehended only a few hours after the shooting he did not appear to be under the influence of drugs or alcohol. (Dkt. 19, Ex. 024, Vol. III at 300; Vol. IV at 313). Never during his taped interview with the detectives or during his testimony at trial did Petitioner claim that he had used drugs or alcohol on the day of the shooting. (Dkt. 19, Ex. 024, Vol. IV at 320-400; Vol. V at 447-477).

Petitioner offers no facts or legal authority to support his allegations. Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Therefore,

---

[3] Petitioner did not file a supporting memorandum of law with his petition.

Petitioner is not entitled to relief upon Ground One.

**Ground Two**

Petitioner claims his trial counsel rendered ineffective assistance of counsel when Petitioner advised her that his mother and grandmother would testify that he had consumed a large amount of alcohol, marijuana, and crack cocaine on the day of, and the days just prior to the shooting, but counsel failed to contact them or call them as witnesses for trial. In his Rule 3.850 motion in state court, Petitioner presented the claim that his mother and grandmother knew he was a "chronically addicted substance abuser" and Jennifer Martin and Petitioner's co-defendant knew that he was intoxicated on crack cocaine, alcohol, and marijuana at the time of the shooting, and he informed trial counsel that these individuals knew of his addiction, but she failed to interview the witnesses regarding the matter. (Dkt. 19, Ex. 005 at 9-11). The state court denied relief as follows:

> **Ground Two:** Defendant alleges counsel was ineffective because she failed to locate, investigate or subpoena for trial witnesses who would have testified that the Defendant was extremely intoxicated on alcohol, marijuana and crack cocaine at the time the offenses were committed. Defendant alleges that he, his mother, and his grandmother could have testified that the defendant was a "chronically addicted substance abuser." Further, he alleges that co-defendant, Robert Robinson and State witness, Jennifer Martin, knew he was high on crack, alcohol, marijuana and Ecstasy at the time the crimes were committed.
>
> The failure to investigate exculpatory witnesses can form the basis for a facially sufficient motion for postconviction relief. *See Campbell v. State*, 616 So.2d 995 (Fla. 2d DCA 1992). In order to state a facially sufficient claim for relief, the Defendant must set forth the identity of the witness, the substance of the witness' testimony, and an explanation of how the omission of that testimony prejudiced the outcome of his trial. *See Robinson v. State*, 659 So.2d 444 (Fla. 2d DCA 1995).
>
> In this case, the Defendant has set forth the identity of the witnesses and the purported substance of their testimony. According to the Defendant, these

9

> witnesses could have testified to his alcohol/drug addiction, and his state of intoxication on the night in question. The Defendant, however, has failed to establish how the omission of that testimony prejudiced the outcome of his trial. Presumably, the Defendant believes that had these witnesses testified on his behalf, their testimony would have provided sufficient evidence of his intoxication as to warrant an instruction on voluntary intoxication at trial. *See Leschka v. State*, 691 So.2d 535 (Fla. 2d DCA 1997).
>
> As noted above under Ground One, however, the discovery available to defense counsel does not support the Defendant's allegations that he was intoxicated or "high" at the time the crimes were committed. Again, the Defendant testified on his own behalf and never mentioned anything about the consumption of drugs on the night in question. (T.T. 447-477) Even during his statements to the authorities, the Defendant never makes any statement about being high or drunk, either prior to or during the commission of these crimes. (T.T. 320-400) Given the chance to address the Court at his sentencing, the Defendant apologized for his actions, but never stated that he had a drug or alcohol problem or that he was high or drunk when the crimes were committed. (11/15/99 Tr. at 17- 20)
>
> Finally, the fact that the Defendant's mother or grandmother could have testified that he was a "chronically addicted substance abuser" is of no consequence. The key issue in a voluntary intoxication defense is whether the Defendant was incapable of forming the specific intent at the time the crime was committed. Whether or not he used or abused drugs at other times is irrelevant. Incidentally, the Court would note that although the Defendant has submitted affidavits from his mother and grandmother to support Ground Eight of his Motion, noticeably absent is any statement categorizing the Defendant as a chronic substance abuser.

(Dkt. 19, Ex. 006 at 4-6).

The record supports the state court's denial of this claim and Petitioner offers no facts or legal authority to support his allegations. Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to relief under Ground Two.

10

**Ground Three**

Petitioner claims his trial counsel was ineffective in failing to object to the trial court's failure to swear in the jurors prior to voir dire questioning, and he argues that this allowed prospective jurors to answer questions untruthfully, and, therefore, inappropriate jurors were allowed to serve on the jury.

Petitioner presented this claim to the state court in his rule 3.850 motion. (Dkt. 19, Ex. 005). The state court denied relief as follows:

> **Ground Three:** Defendant alleges the trial court erred in failing to swear in the jurors prior to voir dire questioning, and his counsel was ineffective for failing to note this error and object. Defendant contends that this is a "structural defect" and, as a result, he is entitled to a new trial.
>
> To accept the Defendant's argument, the Court would have to accept the premise that all of the prospective jurors lied when examined during voir dire, in spite of the Court's instruction to answer the voir dire questions truthfully and fully. (T.T. 12) In any event, the Defendant's conviction is not rendered defective because the jury panel that was seated and actually tried the Defendant's case was properly sworn to try all issues between the State and the Defendant and to render a true verdict according to the law and the evidence. (T.T. 152) *See Zapf v. State*, 17 So. 225 (Fla. 1895); *Brown v. State*, 10 So. 736 (Fla. 1892). Finally, the Defendant indicated his satisfaction with the jury panel that was seated prior to them being sworn. (T.T. 139) Therefore, the Defendant has failed to demonstrate any error on counsel's part or any resulting prejudice in the trial of his case.

(Dkt. 19, Ex. 006 at 6-7).

The record supports the state court's denial of this claim and Petitioner offers no facts or legal authority to support his allegations. As Respondent notes, in Florida the routine procedure is to swear in members of the jury pool in a separate assembly room prior to arriving at the individual courtrooms. *See Hayes v. State*, 855 So. 2d 144 (Fla. 4th DCA 2003). Petitioner does

11

not demonstrate that the jurors from the venire were not sworn outside of the courtroom, nor does he claim or demonstrate that any member of the venire gave untruthful answers during questioning. Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to relief under Ground Three.

**Ground Four**

Petitioner asserts that counsel was ineffective because she operated under an actual conflict of interest which deprived Petitioner of a fair trial. He maintains that on the morning of trial, counsel moved to withdraw, citing her inability to effectively represent Petitioner, but the trial court took no action. He further alleges that prior to trial, counsel conducted a deposition of co-defendant Robert Robison.

Petitioner presented this claim to the state court in his rule 3.850 motion. (Dkt. 19, Ex. 005). The state court denied relief as follows:

> **Ground Four:** Defendant alleges that counsel was ineffective because she failed to object when the trial court did not hold a hearing on an alleged conflict of interest prior to trial. The Defendant states that he is entitled to conflict-free counsel and, because this Court entirely ignored the conflict presented by defense counsel, he is entitled to a new trial. The record conclusively refutes the Defendant's allegations.
>
> Just prior to trial, defense counsel moved the court to withdraw, citing their inability to effectively represent the Defendant at trial because the Public Defender's office was in possession of information indicating the perjured testimony would be presented at trial. (T.T. 4-5) Defense counsel was unsure of how much information could be disclosed to the Court with regard to this ethical dilemma, and informed the Court that the supervising attorney in their office was investigating the situation, had talked to the Defendant about the situation, and had contacted The Florida Bar about the situation. (T.T. 6-7).

12

Although initially indicating that the motion was denied and counsel should proceed with their representation (T.T. 5-6), this Court later allowed defense counsel to continue the motion to withdraw until further advice was received from The Florida Bar. (T.T. 7) During this discussion, the State Attorney indicated that he had no objection to the Court speaking with defense counsel ex parte to further explore the alleged conflict. (T.T. 5) Subsequent to jury selection, the record reflects that the Court and defense counsel met and further discussed these issues, and all motions were denied with regard to same. (T.T. 150) It subsequently became apparent that the conflict regarding potentially perjured testimony involved the Defendant himself, when he took the stand and testified in narrative fashion about the events that resulted in the death of the victim. (T.T. 447-457)

Contrary to the Defendant's suggestion, counsel complied with their ethical duties in disclosing the potential for perjured testimony to the Court. See Rule of Professional Conduct (RPC) 4-3.3 (Candor toward the tribunal). This rule allows for an ex parte proceeding in front of the judge at which the attorney "shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." See RPC 4-3.3(d). In accordance with the judge's ruling denying the motion to withdraw, the attorney offered the Defendant's testimony in the form of a narrative. See RPC 4-3.3(a)(4). Thus, counsel performed all of their duties as required by the ethical rule. [fn 2]

[fn 2] This Court would additionally note that the lawyer's task is not to determine guilt or innocence, but only to present evidence so that a judge or jury may make that determination. Mere suspicion or inconsistent statements by a defendant alone are insufficient to establish that a defendant's testimony would have been false. *See Sanborn v. State*, 474 So.2d 309, 313, n. 2 (Fla. 3d DCA 1985).

Moreover, contrary to the Defendant's allegations, the court did not "entirely ignore" the conflict. The record reflects discussions on the record and an ex parte discussion with defense counsel that led to the Court's ruling. (T.T. 4-7, 150)

**Ground Five**: Defendant alleges a second conflict of interest with his counsel wherein he maintains that counsel purported to represent his co-defendant during a discovery deposition. The attachments to the Defendant's Motion refute his allegations.

Review of the Court file reveals numerous notices for the taking of discovery depositions, including the ones at issue of Deputies Taylor, Riggs, and Williams on March 9, 1999. This notice is specifically directed to the State

> Attorney and to Stephen Walker, attorney for co-defendant, Robert Robison. Apparently, on the date of these depositions, Mr. Walker was not present. At the inception of the first deposition of Diana Taylor, counsel stated, "Mr. Walker is not here, he is in court in Sarasota. So on behalf of Mr. Robison I'll just be covering just basically what you did. (3/9/99 Depo. Transcript at p. 3) Diana Taylor later testified at the Defendant's trial as to the procedures utilized to collect evidence at the crime scene. (T.T. 268-277) She identified evidence collected at the scene and various pictures of the scene. She also testified as to certain evidence that was collected at the house where the co-defendant resided. (T.T. 275-277)
>
> Although the Defendant asserts that his counsel was representing his co-defendant at the deposition in question, the record reflects only that counsel was conducting a discovery deposition to ascertain what involvement Deputy Taylor had in this case.
>
> Taylor's involvement was limited solely to evidence collection and preservation. In light of the fact that Mr. Walker was noticed for this deposition, could have attended and, even in his absence, was able to obtain a transcript of the deposition, the Defendant has failed to demonstrate why counsel's inquiries into Deputy Taylor's role in the case created any conflict of interest. At worst, counsel's statement that she would be asking some questions "on behalf of Mr. Robison" indicates nothing more than some cooperation between counsel in conducting discovery that was essential to the preparation of both of these cases. Clearly, that fact alone does not create any conflict of interest.

(Dkt. 19, Ex. 006 at 7-9).

The record supports the state court's denial of this claim and Petitioner offers no facts or legal authority to support his allegations. The record shows that Petitioner's counsel's performance was not deficient because during trial, counsel attempted to withdraw from representation of Petitioner on the ground of a conflict of interest, but the state trial court denied counsel's motion. (Dkt. 19, Ex. 024, Vol. II at 4-6; Vol. III at 150). Moreover, in so much as Petitioner's claim may be construed as a claim that he was denied his Sixth Amendment right to counsel because counsel had a conflict of interest, Petitioner did not raise the claim on direct appeal of his conviction, and, accordingly, the claim is unexhausted. (Dkt. 19, Ex. 001).

Petitioner raised the claim as an ineffective assistance of counsel claim in his Rule 3.850 motion. (Dkt. 19, Ex. 005). Even if he had exhausted the claim, Petitioner fails to show that "a conflict of interest actually affected the adequacy of his representation," and he does not demonstrate that "his counsel actively represented conflicting interests" or that he was prejudiced by counsel's representation of him at trial. *See Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980). Therefore, Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief under Ground Four.

**Ground Five**[4]

In Ground Five, Petitioner claims that twice during the trial the victim's family cried in the courtroom while the jury was present, and this was prejudicial to him because it inflamed the jury and, therefore, deprived him of a fair trial. Petitioner appears to claim that his counsel was ineffective in failing to object to the victim's family crying in the presence of the jury.

Petitioner presented this claim to the state court in his rule 3.850 motion. (Dkt. 19, Ex. 005). The state court denied relief as follows:

> **Ground Nine**: Defendant alleges that counsel was ineffective for failing to object, ask for a curative instruction, or move for a mistrial as a result of the victim's family crying during the trial. According to the Defendant, the victim's family members "were making a very extravagant showing of crying in front of the jurors in order to evoke sympathy for themselves and inflammatory feelings towards defendant."
>
> Again, the Defendant's claims are without merit. Early in the proceedings, defense counsel brought to the Court's attention the fact that the victim's family

---

[4]Petitioner identifies this claim as "Ground Six" in his federal petition for writ of habeas corpus. (Dkt. 1 at 13).

> was crying. The Court responded, "Actually, I have been noticing, watching the jury, and I haven't noticed any one of them even look out into the audience, but hopefully, if they are going to become upset, you'll let them know to leave." (T.T. 165) The State attorney responded, "Okay." (Id.)
>
> Subsequently, during the testimony of Jennifer Martin, the State's first witness, defense counsel approached the bench and, again, pointed out to the Court that the family was crying, it was louder, and it was prejudicial in front of the jury. (T.T. 224) At that time, defense counsel moved for a mistrial, which was denied by the Court. (T.T. 225) Thereafter, the record reveals no other instances of such crying.
>
> Clearly, the record conclusively refutes the Defendant's allegations that his counsel "failed to object" or move for a mistrial. The Defendant therefore fails to meet the Strickland standard for establishing a claim of ineffectiveness. He fails to set forth any errors or omissions by his attorney that fall outside of the standard of reasonable performance under prevailing standards. Likewise, he fails to establish that he was prejudiced in any fashion.

(Dkt. 19, Ex. 006 at 12-13).

The record reflects that on the two occasions the victim's family cried during the trial, defense counsel brought the matter to the court's attention, and on the second occasion counsel moved for a mistrial. (Dkt. 19, Ex. 024, Vol. III at 165; 224-225). Therefore, counsel's performance was not deficient. Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Therefore, Petitioner is not entitled to relief under Ground Five.

**Grounds Six and Seven[5]**

In Grounds Six and Seven, Petitioner claims that his appellate counsel was ineffective in

---

[5]Petitioner's Grounds Seven and Eight. (Dkt. 1 at 14-15).

16

failing to raise on appeal the claims that Petitioner's confession should not have been presented at trial because he was a juvenile at the time he gave the confession and his parents or guardians were not present at the time he confessed, and the State failed to present evidence of the victim's identity. Petitioner raised these claims in his state Amended Petition for Writ of Habeas Corpus. (Dkt. 19, Ex. 020). The state appellate court dismissed Petitioner's petition as untimely. (Dkt. 19, Ex. 023).

Before this Court may grant habeas relief to a state prisoner under 28 U.S.C. §2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* §2254(b)(1)(A), (C); *Keinz v. Crosby*, 2006 U.S. App. LEXIS 4448, 2006 WL 408686 (11th Cir. 2006); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842; see also *Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot present a federal constitutional claim in federal court unless he first properly presented the claim to the state courts) (citations omitted)). A §2254 petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003) (citing 28 U.S.C. §2254(c)). In so doing, a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt,* 348 F.3d at 1358-59 (citing *O'Sullivan*, 526 U.S. at 845). The

17

failure to properly exhaust state court remedies results in a procedural default of the unexhausted claims. *O'Sullivan*, 526 U.S. at 847.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Id.* (citing *O'Sullivan*, 526 U.S. at 845-6). Under the first exception, to establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. See *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982). In other words, he must show that there is at least a reasonable probability that the outcome of the proceeding would have been different. *See Henderson*, 353 F.3d at 892 (citing *Wright*, 169 F.3d at 703; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002)).

Under the second exception, a federal court may review a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice. *See Henderson*, 353 F.3d at 892 (citing *Murray*, 477 U.S. at 495-96). "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of

someone who is actually innocent." *Id.* This exception relates to a petitioner's "actual" rather than "legal" innocence. See *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998); *Murray*, 477 U.S. at 495-96)). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Panarites v. Crosby*, 2006 U.S. Dist. LEXIS 4202, 2006 WL 196939 at *5 (M.D. Fla., Jan. 24, 2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). Moreover, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Johnson*, 256 F.3d at 1171 (citing *Calderon*, 523 U.S. at 559 (internal quotation omitted)).

Grounds Six and Seven are procedurally defaulted. To avoid a procedural default, a petitioner must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Florida Rule of Appellate Procedure 9.141(c)(4)(B) states that "[a] petition alleging ineffective assistance of appellate counsel shall not be filed more than 2 years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel." Petitioner's conviction became final on April 10, 2001, when the mandate issued on direct appeal. (Dkt. 19, Ex. 004). Therefore, he had until April 10, 2003, to file his state habeas petition, but he did not file the petition until April 30, 2003. (Dkt. 19, Ex. 019).

Petitioner failed to timely present these claims in the state proceedings, and the state appellate court dismissed the claims as untimely. (Dkt. 19, Ex. 023). In addition, Petitioner does

not meet the prejudice or fundamental miscarriage of justice exceptions to lift the state procedural bar. Petitioner failed to present these claims to the state courts in a procedurally correct manner so as to necessitate review on the merits, and it is too late for him to obtain such review. Therefore, these claims are procedurally defaulted. *See, Kight v. Singletary*, 50 F.3d 1539, 1543 (11th Cir. 1995)(A federal habeas court should not even discuss the merits of a claim that has been procedurally defaulted in state court).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1. The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE AND ORDERED** in Tampa, Florida, on September 6th, 2007.

JAMES D. WHITTEMORE
United States District Judge

SA:sfc

Copies furnished to:
All Parties/Counsel of Record